UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TYRONE MILLER,<br><br>   Petitioner<br><br> vs.<br><br>UNITED STATES OF AMERICA,<br><br>   Respondent | CAUSE NO. 3:19-CV-394 RLM<br>(Arising out of 3:17-CR-20 RLM-MGG) |

OPINION and ORDER

A jury found Tyrone Miller guilty of illegal possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) and the court sentenced him to a term of 87 months' imprisonment and two years' supervised release. Mr. Miller appealed. The court of appeals held there was sufficient evidence to support Mr. Miller's conviction but remanded for resentencing. On remand, the court resentenced Mr. Miller to a term of 84 months' imprisonment and two years' supervised release. Mr. Miller's appeal of that sentence was voluntarily dismissed, and he is now before the court requesting that the court vacate his conviction and sentence under 28 U.S.C. § 2255. [Doc. No. 107]. For the following reasons, the court denies Mr. Miller's motion.

I.  BACKGROUND

South Bend police officers dispatched to an accident scene found Mr. Miller unconscious in a car that had crashed into a pole. After an officer handcuffed Mr. Miller but before the officer was able to complete a pat down, Mr.

Miller pulled away and a scuffle ensued. After another officer helped subdue Mr. Miller, the officers picked him up, placed him in a squad car, and transported him to the St. Joseph County Jail for booking on outstanding warrants. When the officers got Mr. Miller out of the squad car at the jail, they found a handgun with an extended magazine where Mr. Miller had been seated. A jury found him guilty of unlawful possession of a firearm.

II. DISCUSSION

Mr. Miller presents two arguments in his petition: that the government didn't give Mr. Miller or his lawyer an opportunity to view the unedited version of a video played for the jury at trial and that he received ineffective assistance of counsel.[1] The rules governing petitions filed under 28 U.S.C. § 2255 provide that once a motion is filed:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits and the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts. Mr. Miller's motion can be resolved without a hearing. *See* Bruce

---

[1] Mr. Miller's petition includes a third ground, titled "withholding exculpatory material." But Mr. Miller doesn't argue that the government failed to produce exculpatory material. Instead, he reiterates the contention he makes in his ineffective assistance claim that his trial counsel agreed with the government that neither side would introduce the results of a DNA analysis on the firearm during trial. Accordingly, the court will address that when addressing his ineffective assistance claim.

2

v. United States, 256 F.3d 592, 597 (7th Cir. 2001); Daniels v. United States, 54 F.3d 290, 293 (7th Cir. 1995).

Mr. Miller first argues that the court should vacate his conviction because the government didn't give Mr. Miller or his lawyer an opportunity to view the unedited version of a video played for the jury at trial. Mr. Miller also argues that the version he and his lawyer viewed was tampered with because the word "enhanced" was displayed while the video played. Because Mr. Miller didn't move to suppress the video before trial, object to its admission as evidence, or raise this issue on direct appeal, the court can't reach the merits of his argument.

If Mr. Miller believed the video was tampered with, he should have filed a motion to suppress before trial. *See* Fed. R. Crim. P. 12(b)(3)(c). And upon questioning from the court, Mr. Miller's counsel said he had no objection to the admission at trial of the redacted version of the video. Because he didn't file a motion to suppress before trial, he waived any suppression argument unless he can show good cause. Fed. R. Crim. P. 12(c)(3); United States v. Cardena, 842 F.3d 959, 988 (7th Cir. 2016). And because Mr. Miller didn't pursue an appeal on this issue, he can't raise it "on collateral review unless [he] shows cause and prejudice," Massaro v. United States, 538 U.S. 500, 504 (2003), or actual innocence. Delatorre v. United States, 847 F.3d 837, 843 (7th Cir. 2017). Mr. Miller offered no cause for not moving to suppress the video before trial or pursuing an appeal on that issue and doesn't argue actual innocence, so he is barred from raising this issue in a collateral attack. *See* Massaro v. United

3

States, 538 U.S. at 504; Delatorre v. United States, 847 F.3d at 843; United States v. Cardena, 842 F.3d at 988.

Mr. Miller next argues that his conviction and sentence should be vacated because his counsel provided him ineffective assistance of counsel. In support of this claim, Mr. Miller argues that his counsel agreed with the government not to introduce evidence that would have been favorable to him at trial: inconclusive results of a DNA analysis on the firearm. He also argues that his counsel allowed the government to play an edited video for the jury without allowing him or the jury to see the full video.

To prevail on an ineffective assistance of counsel claim, Mr. Miller must show both that his attorney's performance "fell below an objective standard of reasonableness" and that there is a reasonable probability that, but for his attorney's errors, the result would have been different. Strickland v. Washington, 466 U.S. 668, 688-693 (1984). This is a difficult standard to meet; to prevail, Mr. Miller must show both "that counsel made errors so serious that 'counsel' was not functioning as the counsel guaranteed the defendant by the Sixth Amendment" and "that counsel's errors were so serious as to deprive [Mr. Miller] of a fair [result]." Strickland v. Washington, 466 U.S. at 687.

Courts recognize a strong presumption that counsel performed effectively. *See* Berkey v. United States, 318 F.3d 768, 772 (7th Cir. 2003). "A court's scrutiny of an attorney's performance is 'highly deferential' to eliminate as much as possible the distorting effects of hindsight, and we 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable

4

professional assistance.' " Vinyard v. United States, 804 F.3d at 1225 (quoting Strickland v. Washington, 466 U.S. at 687). Because reviewing courts shouldn't second-guess counsel's strategic choices, the burden of showing that counsel's decisions fell outside the wide range of reasonable strategic choices "rest[s] squarely on the defendant." Burt v. Titlow, 571 U.S. 12, 22–23 (2013).

"Even if counsel's performance was deficient, a petitioner must also show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different,' meaning 'a probability sufficient to undermine confidence in the outcome.' " Eckstein v. Kingston, 460 F.3d 844, 848 (7th Cir. 2006) (quoting Strickland v. Washington, 466 U.S. at 694).

Mr. Miller argues that his counsel was unconstitutionally ineffective because he agreed with the government not to introduce inconclusive DNA evidence from the firearm at trial, which Mr. Miller argues would have been favorable to him. Mr. Miller says that his lawyer told him that DNA testing on the firearm was inconclusive; testing found multiple DNA contributors found on the weapon and the testing didn't pinpoint Mr. Miller as a contributor. Mr. Miller contends that had this information been disclosed to the jury, it "very well could have been the deciding factor" in the jury's deliberations. [Doc. No. 107 at 4]. The government submitted the certificate of analysis from the Indiana State Police Laboratory. According to the report, Mr. Miller wasn't eliminated as a potential contributor to the DNA found on the firearm; the report indicates the swabs on which sufficient DNA was found for analysis, "each demonstrated the

5

presence of a mixture in which the number of contributors cannot reasonably be assumed . . . [t]herefore, no further conclusions were drawn." [Doc. No. 109-1 at 1].

Deciding how to address inconclusive DNA results from the firearm is a strategic decision for counsel, *see, e.g.,* Penson v. United States, No. 115CR00007MRWCM1, 2019 WL 498852, at *4 (W.D.N.C. Feb. 8, 2019), and the court must "presume that counsel made reasonable strategic choices unless the defendant presents evidence rebutting that presumption." Cooper v. United States, 378 F.3d 638, 641 (7th Cir. 2004) (quoting United States v. Traeger, 289 F.3d 461, 470 (7th Cir. 2002)). *See also* Burt v. Titlow, 571 U.S. 12, 22–23 (2013). Mr. Miller didn't present any evidence to rebut the presumption that his counsel made a reasonable strategic choice in agreeing with the government that neither side would introduce the DNA results, so the court can't find that his counsel's performance was deficient.

Mr. Miller next contends that his counsel was unconstitutionally ineffective because his counsel allowed the government to play an edited video for the jury without allowing him or the jury to see the full video. He argues that the dash camera video from a squad car the government played for the jury during trial was edited, and the government agrees. At trial, the government played an almost 30-minute-long recording from an officer's squad car that showed Mr. Miller's arrest; a minute or so of dialogue in which a police officer and Mr. Miller discussed Mr. Miller's criminal history was edited out of the video. The government reports that it provided copies of both the edited and unedited

6

versions of the video to Mr. Miller's counsel. Mr. Miller maintains that he was never given the opportunity to view the unedited version.

The court needn't address the performance prong of Strickland v. Washington, because Mr. Miller he can only succeed on this claim if he can also show prejudice, which he hasn't done. "To establish prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " United States v. Best, 426 F.3d 937, 945 (7th Cir. 2005) (quoting Strickland v. Washington, 466 U.S. at 694). "Here, that means [Mr. Miller] must show that . . . there was a 'reasonable probability' that he would have been acquitted." United States v. Berg, 714 F.3d 490, 497 (7th Cir. 2013) (quoting Rastafari v. Anderson, 278 F.3d 673, 689 (7th Cir. 2002)). Mr. Miller can't meet that burden.

Mr. Miller doesn't argue he was prejudiced, much less present evidence that would meet his burden. And he doesn't suggest that viewing the entire video, or the jury viewing the entire video, would have altered the outcome of his trial. Because he hasn't shown that absent any alleged deficiency in his counsel's performance the outcome of the proceedings would have been different, he can't establish prejudice and this claim fails. *See* United States v. Best, 426 F.3d 945.

III. CERTIFICATE OF APPEALABILITY

According to Rule 11 of the Rules Governing Section 2255 Proceedings for the United States District Courts, a "court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Issuance of

7

a certificate of appealability requires the court to find that Mr. Miller has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). For the reasons already discussed, he hasn't made such a showing, and the court declines to issue a certificate of appealability.

IV. CONCLUSION

Based on the foregoing, the court DENIES the motion to vacate, [Doc. No. 107]; and DECLINES to issue a certificate of appealability.

SO ORDERED.

ENTERED:   July 23, 2019

/s/ Robert L. Miller, Jr.
Judge, United States District Court

cc: Tyrone Miller